IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
101 W. LOMBARD STREET, BALTIMORE, MARYLAND 21201

**UNITED STATES** *
*
**V.** * **Case No.: 13-0365 GLR**
*
**PAUL CHANCE** *

..ooOoo..

## Motion to Suppress Certain Fruits of a Search

Now comes Paul Chance, by his attorney, Robert H. Waldman, and moves this Court to suppress certain fruits of a warranted search conducted on Mr. Chance's home. In support he states:

**Facts**

1. The following are facts from the affidavit which accompanied the Application for Warrant. *See Exhibit 1: Application and Exhibit 2: Affidavit*. The following cites only the facts material to this Motion.
2. On March 29, 2013, the owner of the business known as the Ashland Café in Cockeysville, Maryland was robbed at those premises in the dead of night at approximately 2:00 am by two persons. Both robbers were armed with handguns. One robber was dressed in a dark colored sweatshirt and dark pants. He wore a black bandanna. The other robber was dressed in a light gray matching sweat suit. He also wore a black bandanna.
3. In addition to money, a handgun known as a Colt Commander was stolen.
4. On April 26, 2013, at approximately 7:40 am as day was breaking two men robbed the Hobbitt Liquor Store in eastern Baltimore County. One was armed with a handgun and the other with a pistol grip shotgun. One wore a dark ski mask and, according to the affidavit accompanying the application for the search warrant, a "dark colored jogging suit with white stripes going down both arms of the jacket." The other robber wore, among other items, a ski mask and a "dark jacket."
5. On April 29, 2013, at an Olive Garden restaurant in mid-Baltimore County, at a

few minutes after midnight, four employees were leaving and locking up the restaurant. They were approached by three men getting out of a dark colored automobile, possibly a Dodge Charger. The police later determined that Chance's girlfriend had rented a Dodge Charger and had authorized him to drive it. A generic license plate was described by the witnesses and the police determined that the vehicle rented by Chance's girlfriend had such a generic license plate.

6. Based on cell site location analysis, the police concluded that Mr. Chance was "in the vicinity of" the Olive Garden that night at that time.

7. Handguns were carried by two men; the third carried a long gun, probably a shotgun. The two men carrying handguns wore black bandannas; one of them wore all black clothing; the other wore a dark colored zip-up jacket and jeans. The man carrying the long gun was described as wearing "dark-colored clothing." A jogging suit with white stripes up and down the sleeves was not described.

8. The next day, April 30, 2013, in the grassy area of a nearby on ramp to I-695, two long guns were found. One was a rifle and the other was a pistol grip shotgun. The firearms were found inside a green Rosedale Coin Laundry bag. No handguns were found.

9. On May 3, 2013 at 12:21 am, in the deep nighttime, Sharmaine Diggs was interrupted from an apparent attempt to rob the Ashland Café. He was wearing a black bandanna and "all dark clothing."

10. Diggs was picked up by Stephanie Ringgold. They were both arrested a short time and a short distance later. A Colt Commander was found in the car.

11. Diggs and Ringgold both admitted to participating in both Ashland Café incidents. As to the first one, Ringgold drove the getaway vehicle. Ringgold further described a person later identified as Paul Chance as the other robber in the first Ashland Café incident.

12. Ringgold further described a photo/text which Diggs had received after the April 26 Hobbit Liquor Store robbery. The photos showed piles of money and the message to Diggs was meant to convey what Diggs had missed by attending to a personal affair the day of the Hobbit robbery. The message was sent from the

phone of a Frank Hill to the phone of Sharmaine Diggs.

13. Chance was not seen in any of the photos Hill had sent.

14. No messages regarding the Hobbit robbery had been sent to or from Chance's phone.

15. The affidavit does not state that Chance's phone was in the vicinity of the Hobbit Liquor store at the time of the robbery.

16. The affidavit does not state that any vehicle associated with Chance was at the Hobbit Liquor Store at the time of the robbery.

17. There is no other information in the affidavit connecting Mr. Chance to the Hobbit Liquor Store.

18. It was at the Hobbit Liquor and only at the Hobbit Liquor Store that one of the robbers wore a "dark colored jogging suit with white stripes going down both arms of the jacket."

19. There is no information in the affidavit that anyone had ever seen Mr. Chance wearing a "dark colored jogging suit with white stripes going down both arms of the jacket."

20. The Application for Warrant and the accompanying affidavit was signed by Detective Mickle on October 3, 2013, five months after the last of the incidents noted above.

21. The warrant authorized the seizure of, among other things, "dark colored jogging suit with light colored stripes going down both arms."

22. There are no facts in the affidavit indicating that evidence from any robbery was freshly seen at Mr. Chance's home. There are no facts in the affidavit that evidence from any robbery was ever seen at Mr. Chance's home. And there are no facts cited that he habitually stored items from robberies at his home.

23. The warrant was executed on October 7, 2013. Seized was, among other items, a "dark blue Addidas sweat shirt with white stripes." *See Exhibit 2: Inventory*.

24. There is no probable cause for the seizure of anything connected with the Hobbit Liquor Store robbery from Mr. Chance or from his home.

**Law**

25. The trial court shall review the probable cause no further than the four corners of the affidavit which accompanies the application. *United States v. Wilhelm,*, 80 F.3d 116, 118 (4th Cir. 1996), *citing United States v. Blackwood,* 913 F.2d 139, 142 (4th Cir. 1990).

26. While the probable cause sufficient to permit a search is evaluated on the "totality of the circumstances," *see Illinois v. Gates,* 462 U.S. 213, 238 (1983), the time between the events giving rise to the probable cause and the event of the search is important. *United States v. McCall,* 740 F.2d 1331, 1335-36 (4th Cir. 1984)("Time is a crucial element of probable cause. A valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.")

27. In this case, over five months intervened between the Hobbit Liquor Store robbery and the search of Mr. Chance's home at which the jogging suit with white stripes down the sleeves was seized. In no other of the robberies was such a garment described. The garment is not unique. The garment would not ordinarily become the type of possession which carries personal, nostalgic or memento value.

28. There are no facts stating why items relating to that robbery, or, in fact, to any robbery, should even be in the defendant's home five months after the event.

29. More important than the passage of time between April 26 and October 7 is that there is no information in the affidavit tying Mr. Chance to the Hobbit Liquor Store robbery. The magistrate who authorized the search for items related to the Hobbit Liquor Store robbery was misled by a confusing affidavit in which there are no objective facts upon which to base Mr. Chance's participation in the Hobbit robbery. The affidavit was recklessly prepared.

30. There was a warrant in this case. Under the good faith exception to the warrant requirement, evidence seized pursuant to a warrant which is later realized to be deficient in probable cause is not suppressed if the officers relied "in good faith" on the authorization contained in the warrant. *United States v. Leon,* 468 U.S.

897, 926 (1984); *United States v. Lalor,* 996 F.2d 1578 (4th Cir. 1993).

31. There are, however, exceptions to the "good faith exception." If "a reasonably well-trained officer... (should) have known that the search was illegal despite the magistrate's authorization," then the good faith exception does not apply. *Leon,* at 922, n.23; *accord Illinois v. Krull,* 480 U.S. 340, 355 (1987); *and United States v. George,* 971 F.2d 1113 (4th Cir. 1992).

32. The Fourth Circuit has noted four situations in which an officer's reliance on a search warrant would not be reasonable, and, therefore, the good faith exception would not apply. *United States v. Hyppolite,* 65 F.3d 1151, 1156 (4th Cir. 1995). Those situations are, in summary:

   a. the officer misleads the magistrate with false information;

   b. the magistrate abandons his or her neutral role;

   c. the warrant is so lacking in probable cause that reliance on it is unreasonable;

   d. the warrant is so facially deficient in specifying the places to be searched and the things to be seized that it is not reasonable to rely upon it.

33. A "bare bones affidavit" might fall into situations a., b., or c. *See United States v. Wilhelm,* 80 F.3d 116, 121-122 (4th Cir. 1996*); and see United States v. Pinder,* 2007 WL 1597787 (E.D. VA, 2007). [1]

34. In this case, with respect to the Hobbit Liquor Store robbery, there are no facts

---

[1] In *Wilhelm,* the court found specifically that the "good-faith exception to the exclusionary rule does not apply in [a] case due to 'bare bones' nature of the affidavit, and because the magistrate could not have acted as other than a 'rubber stamp' in approving such an affidavit." ***Wilhelm,* 80 F.3d at 121** (citing ***Laury,* 985 F.2d at 1311 n. 23).** The *Wilhelm* court noted that it was following the lead of other Court of Appeals cases which held that the *Leon* good-faith exception does not apply in circumstances of bare bones affidavits. *See* **United States v. Leake, 998 F.2d 1359, 1367 (6th Cir.1993)** (declining to rely on *Leon* because the warrant was based only on an anonymous tip with scanty police corroboration and lacked probable cause); *see also* ***United States v. Baxter,* 889 F.2d 731, 734 (6th Cir.1989)** (declining to apply the exception where the officer should have known the informant could not be demonstrated to be reliable); ***United States v. Jackson,* 818 F.2d 345, 350 n. 8 (5th Cir.1987)** (stating that the good-faith exception is not available in the case of bare bones affidavit that stated no evidence of police corroboration).

*United States v. Pinder*, 9, 2007 WL 1597787, at *10 (E.D. Va. June 1, 2007)

upon which to base a conclusion. It is a "bare bones affidavit." Therefore, the magistrate's authorization of the search and seizure of items relating to that robbery is tantamount to abandoning his or her neutral role. The magistrate's signature is the same as a "rubber stamp." Furthermore, it is entirely unreasonable for an officer to rely on the warrant which lacks probable cause.

35. Any evidence seized from Mr. Chance's home which relates to the Hobbit Liquor Store robbery is improperly seized. If other evidence was properly seized during the October 7, 2013 search, that does not justify the introduction of the improperly seized evidence.

WHEREFORE, the Defendant moves this Court to suppress from admission any evidence relating to the Hobbit Liquor Store which was seized from the Defendant's home. The Defendant requests a hearing on this Motion.

Respectfully submitted,

/s/

Robert H. Waldman
113 Ridgely Ave.
Annapolis, MD 21401
Fed. Bar No.: 26188
Attorney for Paul Chance

I hereby certify that on the date this Motion was filed with the Court by CM/ECF, notice of the filing was sent to counsel of record. I also certify that a courtesy copy was delivered by email to Bonnie Greenbert, AUSA.

/s/
Robert H. Waldman